UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO.: H-19-790 |
| | § | |
| v. | § | JUDGE SIM LAKE |
| | § | |
| JONAS TERRY, | § | |
| Defendant | § | |

GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS

The United States of America, by and through Ryan K. Patrick, United States Attorney, and Richard D. Hanes, Assistant United States Attorney, hereby offers the following response to defendant's Motion to Suppress. (Dkt. #17).

**STATEMENT OF THE ISSUES**

Whether the detention of defendant for approximately 2 minutes from his initial stop by officers for a vehicle infraction to the time the officers detained defendant was so long as to render the encounter a violation of defendant's constitutional rights.

Whether, if there was a constitutional violation of defendant's rights, that violation should result in the suppression of evidence seized.

1

**STATEMENT OF THE CASE**

A. <u>Indictment and Motion to Suppress</u>

On October 30, 2019, a two-count indictment issued from the Grand Jury sitting in the United States District Court for the Southern District of Texas, in Houston, Texas, charging Jonas TERRY with being a Felon in Possession of a Firearm, in violation of Title 18, United States Code, §§922(g)(1) and 924(a)(2), and with Possession of a Machinegun in violation of Title 18, United States Code, §§922(o)(1) and 924(a)(2). Both counts originate from TERRY's alleged possession of a Glock 9mm pistol, which had been modified to shoot more than one shot without manual reloading, by a single function of the trigger. (Dkt. #1).

On January 17, 2020, defendant filed a motion to suppress evidence seized as a result of the search of a vehicle driven by defendant on September 29, 2019. (Dkt. #17). Defendant argues that the duration of his detention after initial contact with law enforcement resulted in a constitutional violation of his Fourth Amendment rights against unreasonable search and seizure. The government disagrees and maintains that neither the duration of the detention of defendant, nor the subsequent search of his vehicle resulted in a violation of his constitutional rights.

B. <u>Facts Relevant to Suppression Motion</u>

On September 22, 2019, Houston Police Department received a report of a robbery occurring in the area of a parking lot at the intersection of Cullen and Idaho, in Houston, Texas. Upon contact with the alleged victim of the robbery, the officer learned that the suspect in the robbery was Jonas TERRY. Further, the alleged victim stated that TERRY was involved in drug trafficking in the area. The victim described the vehicle being driven by TERRY as being a red Lincoln with the Texas license plate number 48773Y8.

On September 29, 2019, in the area of a strip mall located at 6800 Cullen, Houston, Texas, HPD officers saw TERRY in and around a Lincoln matching the description of the vehicle given by the alleged robbery victim from the week before. Officers knew from training and experience that the area around the strip mall was an open air illegal drug market. As officers watched, vehicles pulled into the strip mall, and Terry left the area of the Lincoln and went briefly to meet with the occupants, after which he returned to the Lincoln. Based upon their training and experience, officers recognized this pattern of movement as being indicative of drug trafficking. As officers watched, defendant eventually left the area of the strip mall and headed west on Idaho Street.

As HPD Officers Daniel Huber and Ricardo Vela followed defendant in a marked HPD vehicle, they witnessed defendant's

3

vehicle pull into a private drive at the 4500 block of Idaho without first signaling the turn. Officers also noticed that the paper plate was unreadable. Officers conducted a traffic stop on the vehicle for failure to signal turn and unreadable paper plate. As they activated their emergency lights to conduct the stop, the vehicle pulled to a stop in the private drive and the driver, later identified as Jonas TERRY, quickly exited through the drivers' side door, locking the car behind him, and attempted to walk away from the vehicle. Officers stopped him and explained the reason for the traffic stop. When asked for his driver's license and his insurance, TERRY responded by handing officers a worn, illegible document, torn in at least three places, which TERRY said was his Texas ID. TERRY never produced proof of insurance.

TERRY was detained for not having a readable driver's license. As they were cuffing his hands behind his back, officers noticed that TERRY had a white powdery substance on his fingers. Additionally, found in the pocket of his shorts was a pocket knife which had a white powdery substance on the blade that appeared to be crack cocaine. TERRY was also found to have a large amount of cash in his pockets. The money was all in small bills, 1's, 5's, 10's, and 20's, which is consistent with street level narcotic sales. The total of the cash recovered from TERRY's person was $1339.02.

After detaining TERRY for not having a readable driver's license, officers walked up to the vehicle TERRY had been driving and noticed an odor of marijuana coming from the vehicle. Contemporaneously, officers noticed white powdery rocks on the ground right outside the driver's door which appeared to them, based upon training and experience, to be crack cocaine.

Officers then conducted a probable cause search of the vehicle based upon the smell of marijuana coming from the vehicle and the suspected crack cocaine recovered beneath the driver's door. From the vehicle, officers recovered a Glock 19 handgun, serial number BETB720. The Glock had been modified by the addition of a "Glock Switch," which allows the firearm to fire in a fully automatic mode, qualifying the gun as a machine gun under Title 26, United States Code §5845(b). The handgun was loaded and had a round in the chamber.

While officers were still on the scene of the stop, the registered owner of the vehicle, Emilyssaanne Villareal, was called to the scene. Ms. Villareal arrived and identified herself as TERRY's girlfriend. Ms. Villareal denied any knowledge of the gun or anything illegal being in the vehicle. The vehicle was later released to Ms. Villareal.

**SUMMARY OF ARGUMENT**

While investigating defendant for a traffic violation, officers developed a reasonable and articulable suspicion of drug trafficking. This suspicion was further heightened by the personal observations of the officers immediately prior to the traffic stop and a report from a week before that defendant had been involved in an assault and robbery, and was known for drug trafficking. Under the totality of the circumstances present, it was reasonable for the officers to decide upon a course of action to dispel reasonable suspicion of drug trafficking. Having decided on such a course of action, officers conducted an investigation, limited in scope and duration which, rather than dispelling suspicion of drug trafficking, confirmed those suspicions. No Fourth Amendment violation exists in this investigation. The detention of defendant did not unduly prolong a validly conducted traffic stop investigation and the court should overrule defendant's motion to suppress evidence.

A. General Fourth Amendment Principles

The Fourth Amendment protects individuals "against unreasonable searches and seizures." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting U.S. Const. amend. IV). In other words, the touchstone of the Fourth Amendment is reasonableness. *United States v. Brigham*, 382 F.3d 500, 507

(5th Cir. 2004) (en banc). Traffic stops are considered seizures for the purposes of the Fourth Amendment. *Id*. Investigative traffic stops are permissible where the officer possesses reasonable suspicion supported by articulable facts that illegal activity, including a traffic violation, exists. *Lopez-Moreno*, 420 F.3d at 430.

The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Id*. (citing *Knowles v. Iowa*, 525 U.S. 113, 117 (1998)). Under the two-part *Terry* reasonableness inquiry, a reviewing court asks whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. (quoting *Terry*, 392 U.S. at 19-20).

B. <u>Initiation of the Stop Was Justified.</u>

An officer's decision to stop an automobile is reasonable where the officer has probable cause to believe a traffic violation occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Khanalizadeh*, 493 F.3d 479, 482 (5th Cir. 2007). The legal justification for the traffic stop must be "objectively grounded." *id.*; *United States v. Stevens*, 487 F.3d 232, 244 (5th Cir. 2007). The Supreme Court requires, "officers to have a reasonable suspicion, based on objective facts, that the

7

individual [detained for questioning] is involved in criminal activity." *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 2641. "The Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot...." *United States v. Arvizu,* 534 U.S. 266, 266, 122 S.Ct. 744, 750 (2002)(internal quotation marks omitted). Requiring police to have particularized facts that support a finding that "criminal activity may be afoot" is different from requiring the police to articulate particularized facts that support a finding that a particular specific crime is afoot. Requiring a "particularized suspicion" goes beyond reasonable suspicion by requiring direct evidence or the substantial equivalent thereof and imposes a requirement that is too close to probable cause. *Cf. United States v. Sokolow,* 490 U.S. 1, 109 S.Ct. 1581, 1585 (1989) ("We have held that probable cause means 'a fair probability that contraband or evidence of a crime will be found,' and the level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause." (quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)) (internal citations omitted)).

The stop in this case was justified by defendant's violation of Texas Transportation Code §545.104 when he failed to signal a turn prior to turning from a public roadway into a private drive,

and was then unable to provide officers with a legible Texas driver's license, or the equivalent thereof.

C. Under the Totality of the Circumstances, The Duration of the Stop Lasted No Longer Than Necessary for Authorities to Effectuate the Purpose of the Stop and to Dispel Reasonable Suspicion

The second prong of the *Terry* inquiry addresses the duration of the detention: the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" or to dispel reasonable suspicion. *Lopez-Moreno*, 420 F.3d at 430-431. Emphasizing the need to consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes, the Supreme Court has observed that there is no "rigid time limitation on *Terry* stops, because in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *United States v. Sharpe,* 470 U.S. 675, 685, 105 S. Ct. 1568, 1575 (1985). In assessing whether a detention is too long in duration to be justified as an investigatory stop, a court should examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant. *Id.* at 686; *see also United States v. Zukas,* 843 F.2d 179, 182 (5th Cir. 1988) ("[a]lthough there is no litmus test for

9

making this determination, an investigation detention must last no longer than is necessary to effect the purposes of the stop and should employ the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time"). "A court in making this assessment should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." *Sharp,* 470 U.S. at 686, 105 S. Ct. at 1575.

In *United States v. Brigham,* 382 F.3d 500 (5th Cir. 2004), the court abrogated prior decisions to the extent they required a particularized suspicion of a specific crime, or a single, formulaic approach to questioning a person during a traffic stop. *Brigham*, 382 F.3d at 510-512; *see also U.S. v. Pack*, 612 F.3d 341, 355 (2010) ("we hold that *Brigham* should be read as having abrogated *Dortch's* requirement of 'particularized suspicion' of a specific crime, in the sense of something like or generally equivalent of direct evidence of a particular, specific offense."). *Brigham* stated that a requirement of a "single, formulaic approach that an officer must adopt in order to allay his reasonable suspicions during a traffic stop... would engraft upon the Fourth Amendment the very type of bright-line rule the Supreme Court has consistently eschewed." 382 F.3d at 512. In

*Brigham* the court ruled, "We do not presume to prescribe in the abstract the scope of questioning, investigative techniques, or length of permissible detention that may be undertaken following a valid traffic stop. The bounds of existing case law are clear, if fact-intensive: a traffic detention may last as long as is reasonably necessary to effectuate the purpose of the stop, including the resolution of reasonable suspicion, supported by articulable facts within the officer's professional judgment, that emerges during the stop." *Id* at 512. Thus, the standard is one of reasonableness, viewed objectively, and should give due consideration to the officer's experience.

In the instant case, it is unchallenged that the initial stop was proper. Defendant does not dispute that he failed to signal his turn from Idaho Street into a private drive. Nor does he claim that he was the registered owner of the vehicle. Within the first three minutes of contact with defendant, officers determined that the document which defendant was carrying, in lieu of a driver's license, was illegible. It is at that point that defendant is placed in handcuffs and removed to the rear seat of a marked police vehicle.

D.  The Terry Stop Resulted in Probable Cause Necessary to Search Vehicle Driven by Defendant

During cuffing, officers noticed that defendant had a white powder on his hands which officers believed, based upon their training and experience, was crack cocaine. A search of defendant's person revealed a pocket knife which was removed from defendant's pants pocket. Examination of the blade of that knife revealed a white powder on the blade which officers believed, based upon their training and experience, to be crack cocaine. Officers then conducted a search around the vehicle that defendant had exited as they approached him. Officers noticed the smell of burning marijuana emanating from the vehicle. Found on the ground immediately below the driver's side door of the vehicle were small white pieces of what officers believed, based upon their training and experience, was crack cocaine. Following the trail of evidence, officers conducted a warrantless probable cause search of the vehicle defendant had been driving, and discovered a fully automatic Glock handgun underneath the driver's seat of the vehicle.

According to the automobile exception to the exclusionary rule, "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment ... permits police to search the vehicle without more." *Pennsylvania v. Labron,*

518 U.S. 938, 940, 116 S.Ct. 2485 (1996); as cited in *Maryland v. Dyson*, 527 U.S. 465, 467, 119 S. Ct. 2013, 2014 (1999). The vehicle driven by defendant and searched by police in the instant case was not registered to defendant. Defendant does not claim an ownership interest in the vehicle. The vehicle was readily mobile, and as set forth above, officers had developed probable cause to believe the vehicle contained contraband. As such, the Fourth Amendment was not violated by the officers' warrantless search of the vehicle.

### *CONCLUSION*

The first prong of the *Terry* standard is met: the stop of the vehicle driven by defendant was justified after officers observed him violate the traffic code. The second prong of the *Terry* standard is met: during the course of the *Terry* stop, officers developed evidence that there was probable cause to believe the vehicle driven by defendant contained evidence of drug trafficking. The vehicle being readily mobile, and probable cause having been established, the warrantless search of the vehicle was permitted by the Fourth Amendment. That being the case, the evidence recovered by officers during the search of the vehicle is not subject to suppression as urged in defendant's Motion to Suppress (Dkt. #17).

Based upon the foregoing facts and authorities, defendant's motion should be denied.

Respectfully submitted,

RYAN K. PATRICK
United States Attorney


By:      /s/   RICHARD D. HANES
Richard D. Hanes
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that a copy of the foregoing was sent to counsel for Defendant on or before the date of filing.

                                                    /s/ RICHARD D. HANES
                                                RICHARD D. HANES

Joseph F. Vinas
Attorney for Defendant